**UNITED STATES of America,**
**Appellant,**

v.

**PREMISES KNOWN AS 3639–2ND ST., N.E., MINNEAPOLIS, MINNESOTA, a parcel of real property and all appurtenances thereto, legally described as Lot 25, Block 110, Columbia Heights Addition to Minneapolis, Minnesota, Hennepin County, Minnesota, and any and all proceeds from the sale or transfer of such property, Appellee.**

**UNITED STATES of America, Appellee,**

v.

**TWELVE THOUSAND FIVE HUNDRED EIGHTY FIVE AND NO/100 DOLLARS ($12,585.00) IN U.S. CURRENCY, David D. Freeman, Appellant.**

**Nos. 87–5449—87–5450.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 21, 1988.

Decided March 10, 1989.

Rehearing Denied April 11, 1989.

---

James E. Lackner, Minneapolis, Minn., for appellant.

John W. Lundquist, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

The United States appeals the district court's grant of summary judgment against it in the government's forfeiture action under 21 U.S.C. § 881(a)(7).[1] The district court found that the real property in question was not subject to forfeiture because it was not substantially connected to illegal drug activity. The owner of the property, David Freeman, cross-appeals the district court's grant of summary judgment in favor of the government in the consolidated forfeiture action involving $12,585 in currency under 21 U.S.C. § 881(a)(6).[2] We reverse the district court's order regarding the real property and deny the cross-appeal.

An undercover drug investigation involving Deputy Stan Johnson of the Ramsey County Police Department led to the arrests of Freeman, Anthony Bruzek, and Daniel Miller. On February 7, 1985, Bruzek visited Freeman at Freeman's home at 3639 Second Street Northeast, Minneapolis, Minnesota, the subject of the forfeiture

---

1. 21 U.S.C. § 881(a)(7) provides in relevant part for the forfeiture of all real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment."

2. 21 U.S.C. § 881(a)(6) authorizes the forfeiture of "[a]ll moneys * * * furnished or intended to be furnished by any person in exchange for a controlled substance * * *, all proceeds traceable to such an exchange, and all moneys * * * used or intended to be used to facilitate" illegal drug activities.

action, and purchased two ounces of cocaine which were weighed out on a triple beam scale. Bruzek made a $1,800 down payment on the purchase, took the cocaine, and left the house. Bruzek had previously agreed to sell the cocaine to Deputy Johnson. Bruzek was arrested and provided police officers with information that Freeman was his cocaine source.

The same day, Freeman's house was searched pursuant to a warrant. Through execution of the warrant, police recovered, *inter alia,* drugs, drug paraphernalia, a large amount of currency, guns, and ammunition. The $12,585 in currency was found in the pocket of a sportscoat which was hanging in a closet in a bedroom identified from documents in that room as that of Freeman. Intermingled with the currency was $250 in official government funds ("buy money") utilized in undercover purchases of cocaine on January 15, 1985, and January 31, 1985, by Deputy Johnson from Bruzek.

Freeman entered a conditional guilty plea to a charge of unlawful distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and was sentenced to a two-year term of imprisonment. Both the search and conviction were upheld by this court in *United States v. Freeman,* 807 F.2d 149 (8th Cir.1986).

Upon cross-motions for summary judgment in the government's civil forfeiture action against the house and currency, the district court had several affidavits before it, among them, those of Bruzek, Deputy Johnson, Freeman, and a transcript of Bruzek's testimony at Daniel Miller's trial. Bruzek's affidavit showed that he had gone to Freeman's house several times and met Freeman in the garage—discussing future drug deals of larger amounts of cocaine and once receiving a couple of "lines" of cocaine for his personal use. Bruzek also stated that while at Freeman's house for the February 7, 1985 purchase, he asked Freeman if he ever feared being "ripped off" in his home of money and cocaine. Freeman then showed Bruzek a pistol which he kept in his living room for safety.

Freeman admitted the February 7, 1985 drug transaction with Bruzek, but his testimony was that he had never before used his home to facilitate drug purchases or sales, and that the small quantities of drugs and paraphernalia in his home were for his own use. He stated that the currency seized constituted his savings and spending money earned from his job at a printing company.

After a hearing, the district court granted the government's summary judgment motion as to the $12,585 in currency but denied its motion and granted Freeman's cross-motion as to the real property, Freeman's house valued at approximately $60,-000. The district court's opinion is reported at *United States v. Twelve Thousand Five Hundred Eighty–Five and No/100ths Dollars ($12,585.00) in U.S. Currency,* 669 F.Supp. 939 (D.Minn.1987). Both parties appeal.

 In the instant case, it was incumbent upon the government to establish the presence of probable cause. Probable cause in a forfeiture proceeding is "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980); *see also United States v. One 1977 Lincoln Mark V. Coupe,* 643 F.2d 154, 156–57 (3d Cir.1981), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1982). Once this initial showing has been made, the burden shifts to the party opposing forfeiture to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture or that a defense to forfeiture is applicable. *One Blue 1977 AMC Jeep CJ–5 v. United States,* 783 F.2d 759, 761 (8th Cir.1986). If no such rebuttal is made, a showing of probable cause alone will support a judgment of forfeiture. *Id.*

 The district court concluded that the government had not shown that the house had been used in "any continuing drug business" or was "an integral part of an illegal drug operation." The district court cited *United States v. Certain Lots in Va. Beach,* 657 F.Supp. 1062 (E.D.Va.1987), as

factually similar where a court refused to allow forfeiture of a claimant's home based on one drug transaction. In that case, however, there was no evidence that the dealer used the house to store or hide drugs. The drugs were only brought to the house to be repackaged before being sold at another location. In contrast, here the drug sale itself and exchange of money occurred in Freeman's house. Moreover, drugs as well as marked money from prior transactions and tools of the trade were present in the house. The firearms on the premises may be considered tools of the trade the same as scales, glassine bags, cutting equipment, and other narcotics equipment. *United States v. Milham*, 590 F.2d 717, 721 (8th Cir.1979).

We cannot agree with the district court that forfeiture of the house would be outside the spirit or intent of the law, and we find no requirement of a continuing drug business or ongoing operation. Rather, we believe that if persons "make real property available as a situs for an illegal drug transaction, it is forfeitable," *United States v. 26.075 Acres*, 687 F.Supp. 1005, 1014 (E.D.N.C.1988), as the forfeiture statute requires only "a violation" of the title. 21 U.S.C. § 881(a)(7).

> Just as a single illegal drug transaction within the confines of a conveyance will render that conveyance subject to forfeiture, *e.g.*, *United States v. One 1972 Datsun*, 378 F.Supp. 1200, 1202 (D.N.H. 1974), utilizing or intending to utilize one's real property as the site for a drug transaction or intended drug transaction will render it subject to forfeiture.

*United States v. 26.075 Acres, supra*, 687 F.Supp. at 1016.

Nor do we find merit in any underlying "de minimis" argument that the sale of a relatively small amount of cocaine does not warrant forfeiture of the house. The so-called nexus test is not a measure of the amount of drugs or drug trafficking, and we find the proportionality between the value of the forfeitable property and the severity of the injury inflicted by its use to be irrelevant. *See, e.g., Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682–87, 94 S.Ct. 2080, 2091–94, 40 L.Ed.2d 452 (1974) (forfeiture of $20,000 yacht based on discovery of single marijuana cigarette on board under Puerto Rican Statute modeled after 21 U.S.C. § 881(a)(4)); *United States v. One 1982 28' Int'l Vessel*, 741 F.2d 1319, 1322 (11th Cir.1984); *United States v. One 1976 Porsche 911S*, 670 F.2d 810, 812 (9th Cir.1979); *United States v. One 1975 Mercedes 280S*, 590 F.2d 196, 198 (6th Cir.1978); *United States v. One Clipper Bow Ketch NISKU*, 548 F.2d 8, 11 (1st Cir.1977).

Freeman admits the sale of cocaine in the house; he argues in response to the government, however, that there was an inadequate nexus between his house and the sale of two ounces of cocaine to warrant forfeiture. First, we note that the quantity of narcotics is not a factor or an issue in our inquiry. Second, it is true that 21 U.S.C. § 881(a)(7) requires something more than an incidental or fortuitous contact between the property and the underlying illegal activity, although the property need not be indispensable to the commission of a major drug offense. The statute clearly provides for the forfeiture of property used or intended to be used to commit or facilitate a violation of Title 21. Through this statute, Congress has expanded the nation's war on drugs to every piece of real property involved in the narcotics trade.

The term "facilitate," as used in the context of the forfeiture statute, has been interpreted to encompass activity making the prohibited conduct less difficult or "more or less free from obstruction or hindrance." *United States v. One 1977 Mark V Coupe, supra*, 643 F.2d at 157 (quoting *United States v. One 1950 Buick Sedan*, 231 F.2d 219, 222 (3d Cir.1956)). Here, the house was admittedly used in the sale of drugs; indeed, a triple beam scale, sifting device and covered bowl with cocaine residue, a baggie containing cocaine, and a balance pan, spoon, straw, razor blade, and drug notes were found in the house. In these circumstances, the mere use of the house for drug storage and concealment clearly made the sale of cocaine less difficult. Moreover, the house as a structure

itself was actually used in the commission of the offense.

Freeman argues that the government failed to establish a "substantial connection" between the house and the prohibited activity. He maintains that for this reason, the district court's grant of summary judgment in his favor regarding the house should be upheld. Although Freeman and the district court have properly noted that in *United States v. One 1976 Ford F–150 Pick–Up*, 769 F.2d 525, 527 (8th Cir.1985), this court reversed a judgment of forfeiture under section 881(a)(4) because the vehicle in question was not shown to have "facilitated the illegal activity" or to otherwise have been "substantially associated" therewith, that case is factually distinguishable. There was no evidence that the vehicle had been used to transport drugs or had regularly been used to visit or inspect the marijuana crop, but had simply been observed unloading materials for roofing a shed located near a marijuana field. Here, as we have discussed, the use of the house to actually commit and facilitate the sale of cocaine sufficed to establish a sufficient connection between the house and the illegal activity. Consequently, Freeman's reliance upon *One 1976 Ford F–150 Pick–Up* is misplaced.

After examining the record, we are persuaded that the undisputed evidence adduced by the government is sufficient to conclude that Freeman's house was used in contravention of 21 U.S.C. § 881(a)(7). The government filed affidavits containing detailed facts supporting its forfeiture contentions: that the February 7, 1985 transaction took place in Freeman's basement where Freeman had two ounces of cocaine sitting on his triple beam scale waiting to give to Bruzek and that approximately $1,800 exchanged hands with Bruzek intending to later return to Freeman's house to pay him the balance of $3,200. As indicated, because the crime occurred in the house, we find the relationship obvious. In sum, the government met its burden and established probable cause to believe that Freeman's house was used in the commission or facilitation of a narcotics offense. Freeman did not overcome that showing;

nor did he establish a genuine dispute of material fact. Accordingly, the judgment of the district court withholding forfeiture of the house is reversed.

Finally, Freeman argues on cross-appeal that the forfeiture of $12,585 in currency was unlawful and that only $250 of the commingled money is referrable to drug transactions. The currency was forfeited in accordance with 21 U.S.C. § 881(a)(6). The section permits the forfeiture of funds traceable to or used or intended to be used in illegal drug activities.

Freeman insists that he maintains sizeable sums of cash because he suffers from dyslexia and has difficulty drafting checks. He stated that the currency constituted earnings he was saving to purchase a trailer in cash.

Probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life. *United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895, 904 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). The evidence of drugs, handguns, and drug paraphernalia linking the currency to illegal drug activity, as well as the irregularity of storing over $12,000 in one's coat pocket, results in sufficient probable cause to find that the entire $12,585 is subject to forfeiture.

Like the district court, we find no genuine issue of material fact, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and affirm the district court's ruling that the entire amount of currency is subject to forfeiture under 21 U.S.C. § 881(a)(6). The cross-appeal is without merit and is denied.

In sum, we reverse the district court's failure to order forfeiture of the house and affirm the district court's grant of summary judgment forfeiting the currency. We remand this case to the district court with directions to implement the decision stated herein.

ARNOLD, Circuit Judge, concurring.

I agree that the connection between Freeman's house and illegal drug activities

was clearly sufficient to justify forfeiture under 21 U.S.C. § 881(a)(7). I write separately only to point out that in so holding this Court does not depart from its past insistence that there must be a substantial connection between the property being forfeited and a drug-related crime.

In *United States v. One 1976 Ford F–150 Pick–Up*, 769 F.2d 525 (8th Cir.1985) (per curiam), we reversed a judgment of forfeiture against a pick-up truck that had been used to transport roofing materials to a shed near a field where marijuana was growing. There was no evidence that the truck had ever carried marijuana, and "[i]t [was] unclear ... how the shed helped or otherwise made easier the possession of the crop." *Id.* at 527. Any connection between the truck and the illicit crop was "simply too tenuous and far removed to support its forfeiture." *Ibid.* The present case is almost *toto coelo* different. The house on Second Street Northeast was Freeman's cocaine store. Not only did at least one sale take place there, but it also contained guns, drug paraphernalia, and a large amount of cash, some of it in marked bills traceable to previous undercover buys.

In *One 1976 Ford F–150 Pick–Up* we recalled the Supreme Court's instruction that " '[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law.' " 769 F.2d at 527, quoting *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939). We warned that "the forfeiture statute was [not] meant to support divestiture of private property based on an insubstantial connection between the [property] and ... underlying criminal activity.' " *Ibid.*, quoting *United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026, 1029 (1st Cir.1980).

Our opinion today is consistent with these principles. We are not holding that a *de minimis* connection between the property and the crime is sufficient for forfeiture. The *quantity* of cocaine involved can be "relatively small," *ante* at 1096, but the *quality* of the relationship between the property and the crime must be substantial. "[I]t is true," we point out, *ante* at

1096, "that 21 U.S.C. § 881(a)(7) requires something more than an incidental or fortuitous contact between the property and the underlying illegal activity...." Moreover, the statement that "we find the proportionality between the value of the forfeitable property and the severity of the injury inflicted by its use to be irrelevant," *ante* at 1096, is to be read in the context of the present case, which raises only issues of statutory interpretation. We are not today foreclosing the possibility that a given use of the forfeiture statutes may violate the Excessive Fines Clause of the Eighth Amendment. Just as a life sentence for a traffic violation would be so disproportionate as to violate the Cruel and Unusual Punishments Clause, so one can imagine applications of the forfeiture statutes that would be so draconian as to violate the Excessive Fines Clause.

On this understanding, I join the opinion of the Court and concur in its judgment.